Slip Op. 20-175

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **CELIK HALAT VE TEL SANAYI A.S.,** | |
| **Plaintiff,** | |
| v. | |
| **UNITED STATES,** | **Before: Claire R. Kelly, Judge** |
| **Defendant,** | **Court No. 20-03843** |
| **and** | |
| **INSTEEL WIRE PRODUCTS COMPANY ET AL.,** | |
| **Defendant-Intervenors.** | |

## OPINION AND ORDER

[Denying plaintiffs motion for a temporary restraining order and preliminary injunction.]

Dated: December 6, 2020

Irene H. Chen, Chen Law Group, LLC, of Rockville, MD, for plaintiff.

Tara K. Hogan, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for defendant. Also on the brief was Jeffrey Bossert Clark, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Reginald T. Blades, Jr., Assistant Director. Of counsel were Reza Karamloo and Jesus Saenz, Attorneys, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce.

Brooke M. Ringel, Paul C. Rosenthal, Kathleen W. Cannon, R. Alan Luberda, and Joshua R. Morey, Kelley Drye & Warren, LLP, of Washington, DC, for defendant-intervenors Insteel Wire Products Company et al.

Kelly, Judge:  Before the court is Plaintiff Celik Halat ve Tel Sanayi A.S.'s ("Celik" or "Plaintiff") motion for a temporary restraining order ("TRO") and preliminary injunction.  See Pl.'s Mot. for [TRO] & Prelim. Injunction, Nov. 19, 2020, ECF No. 5 ("Pl.'s Mot."). Defendant opposes Plaintiff's motion.  See Def.'s Resp. to Pl.'s Mots. for [TRO] & Prelim. Injunction, Dec. 4, 2020, ECF No. 17 ("Def.'s Resp."). For the following reasons, Plaintiff's motion is denied.

## BACKGROUND

On May 6, 2020, the U.S. Department of Commerce ("Commerce") initiated its antidumping duty ("ADD") investigation of prestressed concrete steel wire ("PC Strand") from the Republic of Turkey ("Turkey").  See Compl. at ¶ 3, Nov. 19, 2020, ECF No. 2 ("Compl."); see also [PC Strand] from Argentina, Colombia, Egypt, Indonesia, Italy, Malaysia, the Netherlands, Saudi Arabia, South Africa, Spain, Taiwan, Tunisia, [Turkey], Ukraine, and the United Arab Emirates, 85 Fed. Reg. 28,605, 28,610 (Dep't Commerce May 13, 2020) (initiation of less-than-fair value investigations).   On June 18, 2020, Commerce selected Celik for individual examination.  See Compl. at ¶ 4.  The next day, Commerce issued to Celik an antidumping questionnaire and set forth a deadline of July 17, 2020 for Celik's Section A response; August 10, 2020 for its Sections B and Section C responses; and August 13, 2020 for its Section D responses.  See id. at ¶ 5.  Celik's questionnaire responses were to be uploaded electronically to Commerce's ACCESS website by 5:00 pm on the specified deadline for each section.  See id.

Plaintiff states that it timely filed its Section A and Section D questionnaire responses, but, due to technical issues with Commerce's ACCESS website, untimely filed portions of their Section B and Section C responses. See id. at ¶¶ 7–17.  Namely, with respect to its Section B response, Plaintiff untimely submitted a supplementary "Domestic Sales Table" at 5:21 pm, and with respect to its Section C response, Plaintiff untimely submitted Exhibits C8–11—which comprised a part of Celik's response—at 5:06 pm.  See id. at ¶ 8.  Since Plaintiff did not meet the 5:00 pm deadline on August 10, 2020, Commerce refused to accept Plaintiff's Sections B and C questionnaire responses.  See id. at ¶¶ 18–22.[1]  On September 30, 2020, Commerce issued a preliminary determination in which it found that Plaintiff did not cooperate with the investigation to the best of its ability, and thus Commerce used facts available with an adverse inference ("adverse facts available" or "AFA")[2] to

---

[1] Plaintiff asserts that on August 19, 2020, Commerce notified Plaintiff by letter that it was rejecting Plaintiff's untimely filed Section B and Section C questionnaire responses, and Plaintiff subsequently submitted a request for Commerce to reconsider its refusal to accept the responses, stating that the technical issues it experienced constituted extraordinary circumstances.  See Compl. at ¶¶ 18–19; see also 19 C.F.R. § 351.302 (2020) (allowing Commerce to consider late questionnaires if extraordinary circumstances led to the delay).  Commerce denied this request, after which Plaintiff states that it requested, and attended a video conference with Commerce once again asking it to consider the questionnaire responses.  See Compl. at ¶¶ 20–21.  In addition, after the petitioner in the ADD and countervailing duty investigation wrote a letter to Commerce calling for the imposition of adverse facts available, Plaintiff states that it responded, and asked Commerce to accept its responses.  See id. at ¶ 22.

[2] Parties and Commerce sometimes use the shorthand "AFA" or "adverse facts

(footnote continued)

preliminarily assign Plaintiff a dumping margin of 53.65 percent.  See [PC Strand]

from Argentina, Colombia, Egypt, Indonesia, Italy, Malaysia, the Netherlands, Saudi

Arabia, South Africa, Spain, Taiwan, Tunisia, [Turkey], Ukraine, and the United

Arab Emirates, 85 Fed. Reg. 61,722 (Dep't Commerce Sept. 30, 2020) (prelim.

affirmative determinations of sales at less than fair value & prelim. affirmative

critical circumstances determinations, in part) ("Prelim. Results") and accompanying

Decisions Memo. for the [Prelim. Results] at 7–9, A-489-842, (Sept. 23, 2020),

available at https://enforcement.trade.gov/frn/summary/turkey/2020-21546-2.pdf

(last visited Dec. 5, 2020); see also Section 776 of the Tariff Act of 1930, as amended,

19 U.S.C. § 1677e (2018).[3]

On November 19, 2020, Plaintiff Celik initiated this action pursuant to 28

U.S.C. § 1581(i) (2018)[4] by concurrently filing a summons and complaint.  See

Summons, Nov. 19, 2020, ECF No. 1; Compl.  Plaintiff submits that Commerce's

refusal to accept its Section B and Section C questionnaire responses were arbitrary,

capricious, an abuse of discretion and not in accordance with law.  See Compl. at ¶¶

---

available" to refer to Commerce's reliance on facts otherwise available with an
adverse inference to reach a final determination. AFA, however, encompasses a two-
part inquiry established by statute.  See 19 U.S.C. § 1677e(a)–(b).  It first requires
Commerce to identify information missing from the record, and second, to explain
how a party failed to cooperate to the best of its ability as to warrant the use of an
adverse inference when "selecting among the facts otherwise available."  Id.

[3] Further citations to the Tariff Act of 1930, as amended, are to the relevant
provisions of Title 19 of the U.S. Code, 2018 edition.

[4] Further citations Title 28 of the U.S. Code are to the 2018 edition.

43–44, 48–49.  In addition, since Commerce declined to accept the Sections B and Section C responses, Plaintiff claims that Commerce assigned it a "punitive" and inaccurate dumping margin of 53.65 percent that would cause Plaintiff irreparable harm, including the total and permanent loss of Plaintiff's U.S. market.  See id. at ¶¶ 24–25, 46, 48–49.

Shortly thereafter, Celik moved for a TRO and a preliminary injunction requesting that the court enjoin Commerce from refusing to accept Plaintiff's untimely submitted Section B and Section C questionnaire responses.  See Pl.'s Mot. Plaintiff also filed a motion to consolidate this case with Celik Halat ve Tel Sanayi A.S. v. United States, Ct. No. 20-03848, another action challenging Commerce's decision to reject Celik's untimely questionnaire responses in the ongoing countervailing duty investigation of PC Strand from Turkey.  See Pl.'s Mot. to Consolidate Cases, Nov. 19, 2020, ECF No. 6; see also Compl., Nov. 19, 2020, ECF No. 2 (from Dkt. Ct. No. 20-03848).

On November 20, 2020, the court held a telephonic conference with counsel for both parties for purposes of establishing a briefing schedule for the motion for a TRO and a preliminary injunction.  See Appearance Sheet, Nov. 20, 2020, ECF No. 10. During the telephone conference, Defendant indicated that the government would be filing a motion to dismiss the complaint for lack of subject matter jurisdiction.  The court ordered a schedule providing for the Defendant to respond to Plaintiff's motion by December 4, 2020, and further providing for briefing of the motion to dismiss.  See

Scheduling Order, Nov. 20, 2020, ECF No. 11.  The court also stayed the motion to consolidate pending resolution of the motion to dismiss.  <u>See</u> <u>id.</u>  In accordance with the court's order, Defendant filed its response to the request for a TRO and a preliminary injunction on December 4, 2020.  <u>See generally</u> Def.'s Resp.

Defendant opposes Plaintiff's motion, arguing that Plaintiff is unlikely to succeed on the merits because this Court lacks jurisdiction and there has been no final agency action.  <u>See</u> <u>id.</u> at 7–12.  Further, Defendant argues that Plaintiff has not shown that it will suffer irreparable harm absent the injunction, nor has it shown that the public interest and balance of harms weigh in its favor.  <u>See</u> <u>id.</u> at 12–19

## STANDARD OF REVIEW

U.S. Court of International Trade ("USCIT") Rule 65 permits the court to issue a preliminary injunction on notice to the adverse party.  <u>See</u> USCIT R. 65(a).  To obtain a preliminary injunction, Plaintiff must establish that (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm without a preliminary injunction, (3) the balance of the equities favors Plaintiff, and (4) the injunction is in the public interest.  <u>See</u> <u>Winter v. Natural Res. Def. Council, Inc.</u>, 555 U.S. 7, 20 (2008); <u>Zenith Radio Corp. v. United States</u>, 710 F.2d 806, 809 (Fed. Cir. 1983) ("<u>Zenith Radio Corp.</u>").  In reviewing these factors, "no one factor, taken individually," is dispositive.  <u>Ugine & ALZ Belg. v. United States</u>, 452 F.3d 1289, 1292 (Fed. Cir. 2006) (citations omitted) ("<u>Ugine & ALZ Belg.</u>"); <u>FMC Corp. v. United States</u>, 3 F.3d 424, 427 (Fed. Cir. 1993).  However, each factor need not be given equal

weight.  See Ugine & ALZ Belg., 452 F.3d at 1293; Nken v. Holder, 556 U.S. 418, 434

(2009) ("Nken").  Likelihood of success on the merits and irreparable harm are

generally considered the most significant factors in evaluating a motion for injunctive

relief.  See Nken, 556 U.S. at 434; Amazon.com, Inc. v. Barnesandnoble.com, Inc., 239

F.3d 1343, 1350 (Fed. Cir. 2001).

## DISCUSSION

### I.    Likelihood of Success on the Merits

Plaintiff's likelihood of success on the merits depends upon whether: (a) the

court has subject matter jurisdiction; (b) Plaintiff has challenged a final agency action

ripe for review; and (c) Commerce abused its discretion in rejecting Plaintiff's

questionnaire.

### A. Subject Matter Jurisdiction

Defendant asserts that Plaintiff is unlikely to succeed on the merits because

the court lacks subject matter jurisdiction over the complaint, and has indicated that

it intends to file a motion to dismiss.[5]  The court concludes that it is likely that the

court lacks subject matter jurisdiction over Plaintiff's claims.

---

[5] Although Defendant has not yet filed its motion, the court must consider the
"likelihood" that it has subject matter jurisdiction over this proceeding in order to
analyze the likelihood that Plaintiff will succeed on the merits.  The court discusses
the "likelihood" that it has jurisdiction in this case, as opposed to conclusively
determining whether or not it has jurisdiction, because the motion before the court is
for a preliminary injunction and TRO, and not a motion to dismiss.

The court cannot exercise jurisdiction under 28 U.S.C. § 1581(i) where another subsection "is or could have been available, unless the remedy provided under that other subsection would be manifestly inadequate." Miller & Co. v. United States, 824 F.2d 961, 963 (Fed. Cir. 1987). "While neither Congress nor the courts have provided a precise definition of the term 'manifestly inadequate,' given the clear Congressional preference expressed in [28 U.S.C. § 1581(i)] for review in accordance with [19 U.S.C. § 1516a], the Court must be careful not to interfere in ongoing proceedings absent a clear indication of the inadequacy of a [19 U.S.C. § 1581(c)] review." Sahaviriya Steel Indus. Pub. Co. Ltd. v. United States, 33 CIT 140, 151, 601 F. Supp. 2d 1355, 1365 (2009) (citations omitted) ("Sahaviriya"). Moreover, "[a] party may not expand a court's jurisdiction by creative pleading." Sunpreme Inc. v. United States, 892 F.3d 1186, 1193 (Fed. Cir. 2018) (quoting Norsk Hydro Can., Inc. v. United States, 472 F.3d 1347, 1355 (Fed. Cir. 2006)). Instead, the court must "look to the true nature of the action in the district court in determining jurisdiction of the appeal." Id. (citations omitted).

Recourse under 19 U.S.C. § 1581(c) is not manifestly inadequate when judicial review pursuant to subsection (c) provides the remedy Plaintiff seeks—namely, a remand order directing Commerce to reconsider or further explain its refusal to accept Plaintiff's submissions. That Plaintiff frames its request for relief in such a way as to urge disposition of this cause of action before publication of the final

determination cannot serve as the basis for the court's exercise of jurisdiction in this instance.

As such, although styled as an action under 28 U.S.C. § 1581(i), it appears the "true nature" of Plaintiff's action arises under § 1581(c), see Juancheng Kangtai Chem. Co. v. United States, 932 F.3d 1321, 1326 (Fed. Cir. 2019), which, pursuant to 19 U.S.C. § 1516a, enables Plaintiff to seek judicial review of the final results of an ADD investigation.  Indeed, what Plaintiff seeks by asking the court to require Commerce to accept its untimely submission is not a temporary relief, but essentially the ultimate relief in a case challenging Commerce's final determination in an ADD investigation.  See, e.g., Cyber Power Systems (USA) Inc. v. United States, 44 CIT __, __, Slip Op. 20-130 at 7–8 (Sept. 2, 2020) ("Cyber Systems").

Plaintiff argues that the remedy under § 1581(c) is manifestly inadequate because the harm it alleges is a loss of its U.S. sales market owing to Commerce's failure to accept its questionnaire response. See Pls.' Mot. at 9–10.  However, without more, harm attributable to a possible abuse of discretion within an investigation is insufficient to render the remedy afforded by 19 U.S.C. § 1581(c) "manifestly inadequate." See Sahaviriya, 33 CIT at 155, 601 F. Supp. 2d at 1368–69 (citations omitted) (finding the harm attributable to a potentially unauthorized antidumping proceeding insufficient to show that relief pursuant to 28 U.S.C. § 1581(c) is manifestly inadequate).  The harm alleged by Plaintiff is incidental to participation in an antidumping investigation and is likely insufficient to surmount well-

established principles requiring that this court strictly enforce the statutory and administrative requirements for bringing a cause of action under § 1581(c).  As such, it is unlikely that this court has subject matter jurisdiction over Plaintiff's complaint.

## B. Final Agency Action

Defendant argues that Celik is unlikely to succeed on the merits because its claim is not ripe.  See Def.'s Resp. at 9–12.  "Ripeness is a justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" Nat'l Park Hospitality Ass'n v. U.S. Dep't of Interior, 538 U.S. 803, 807–08 (2003).

Even if Plaintiff's complaint were properly before the court pursuant to 28 U.S.C. § 1581(i), it is unlikely that there is a viable cause of action because Commerce has not yet issued its final determination.  It is possible that Commerce may reconsider challenged aspects of its preliminary determination, thus, involving the court at this juncture risks undue entanglement with the administrative process on the basis of contingent future events.  See, e.g., Thomas v. Union Carbide Agric. Prods. Co., 473 U.S. 568, 580–81 (1985).  As such, the court concludes that ripeness concerns would weigh against Plaintiff's likelihood of succeeding on the merits.

### C.  Abuse of Discretion

Under 19 C.F.R. § 351.302, Commerce may reject untimely filed factual submissions.  <u>See</u> 19 C.F.R. § 351.302.  Commerce has discretion to set and enforce its own deadlines to ensure finality, and the court reviews Commerce's decision to reject Celik's submission for abuse of that discretion.  <u>See</u> <u>Bosun Tools Co. v. United States</u>, 43 CIT __, __, 405 F. Supp. 3d 1359, 1365–66 (2019) (citing <u>Grobest & I-Mei Industrial (Vietnam) Co. v. United States</u>, 36 CIT 98, 122–23, 815 F. Supp. 2d 1342, 1365–66 (2012) ("<u>Grobest</u>"); <u>NTN Bearing Corp. v. United States</u>, 74 F.3d 1204, 1207 (Fed. Cir. 1995) ("<u>NTN Bearing Corp.</u>")).  Commerce abuses its discretion when it rejects information that would not be burdensome to incorporate and which would increase the accuracy of the calculated dumping margins.  <u>See</u> <u>Grobest</u>, 36 CIT at 122–23, 815 F. Supp. 2d at 1365–66; <u>see also</u> <u>NTN Bearing Corp.</u>, 74 F.3d at 1207–08 (holding that Commerce abused its discretion where its decision not to use a "straightforward mathematical adjustment" to correct for certain clerical errors led to "the imposition of many millions of dollars in duties not justified under the statute.").  Moreover, the court may review Commerce's decision to ensure that it is not "treating similar situations in dissimilar ways." <u>Nakornthai Strip Mill Public Co. v. United States</u>, 32 CIT 1272, 1276, 587 F. Supp. 2d 1303, 1307 (2008) (citations omitted).

Plaintiff submits that Commerce abused its discretion in rejecting its questionnaire responses because Commerce has granted extensions for reasons less

severe than the circumstances surrounding the alleged 21-minute delay that gives

rise to this action.  See Pl.'s Mot. at 18–20.  Plaintiff's allegations raise serious

concerns regarding Commerce's justification for rejecting Plaintiff's requests for

reconsideration; however, these concerns are insufficient to establish that the

Plaintiff is likely to succeed in light of the jurisdictional and ripeness concerns.

## II.    Irreparable Harm

Plaintiff alleges that, without the requested relief, it will suffer irreparable

financial and reputational harm and will lose its business in the United States.  See

Pl.'s Mot. at 12–14.  Defendant contends that it is unclear that Plaintiff's requested

relief would alleviate any of the alleged harms, and further submits that Plaintiff's

allegations of financial harm are not actual and imminent, but rather, speculative.

See Def.'s Resp. at 12–17.  Plaintiff fails to demonstrate that imminent, irreparable

harm would occur if its motion is denied.

A finding of irreparable harm requires that a Plaintiff demonstrate "a viable

threat of serious harm which cannot be undone." Zenith Radio Corp., 710 F.2d at

809 (citations omitted).  Generally, an allegation of financial loss alone, however

substantial, which is compensable with monetary damages, is not irreparable harm

if such corrective relief will be available at a later date.  See Sampson v. Murray, 415

U.S. 61, 90 (1974) ("Sampson").  As such, "[t]he possibility that adequate

compensatory or other corrective relief will be available at a later date, in the

ordinary course of litigation, weighs heavily against a claim of irreparable

Court No. 20-03843                                                                Page 13

harm." Id.  Nevertheless, irreparable harm may take the form of "[p]rice erosion, loss

of goodwill, damage to reputation, and loss of business opportunities." Celsis

In Vitro, Inc. v. CellzDirect, Inc., 664 F.3d 922, 930 (Fed. Cir. 2012).  Substantial loss

of business is irreparable harm because, in addition to the obvious economic injury,

loss of business renders a final judgment ineffective, depriving the movant of

meaningful judicial review.  See Doran v. Salem Inn, Inc., 422 U.S. 922, 932 (1975).

Plaintiff offers an affidavit from its Chief Executive Officer, Serdar Seylam, as

support for its claim that the failure to obtain the relief it seeks will cause it

irreparable harm.  See Pl.'s Mot. at Ex. J.  The affidavit states that Celik will lose its

U.S. customer base, which is a significant portion of its business—the loss of which

will impact the employment of its work force, its shareholders, and its future

prospects in the U.S. market.  See generally id.  Plaintiff claims that its customers

have already communicated that they could not continue doing business with

Plaintiff's U.S. PC Strand business if the preliminary rates that Commerce assigned

"are confirmed in the final determination." See Pl.'s Mot. at Ex. J, ¶¶ 11–12.  Plaintiff

also states that its U.S. customer has already started looking for an alternate supplier

of PC Strand.[6]  See Pl.'s Mot. at Ex. J, ¶ 17.  Plaintiff provides no information

---

[6] Defendant also avers that Plaintiff's two months delay in seeking relief undermines
its claim of imminent harm.  See Def.'s Resp. at 13.  Plaintiff does not explain its
delay in its motion, nor is the basis for the delay obvious to the court.

concerning other markets or customers.[7]  Plaintiff further alleges that if this court

does not grant its motion, it will suffer financial losses in the amount of $96,000 per

month.  <u>See</u> Pl.'s Mot. at Ex. J, ¶ 15.  However, Plaintiff makes these allegations

without citing to any evidence of its assets and whether or not they are sufficient to

cover the costs.  Plaintiff merely states that "[t]he losses will adversely affect our

shareholders, employees and their families."  <u>See</u> Pl.'s Mot. at Ex. J, ¶ 15.  Plaintiff

offers no evidence that speaks to the question of whether the alleged harm is

unavoidable or irreparable.  Moreover, although financial losses and loss of business

opportunities can constitute irreparable harm, the losses generally must be more

severe than shown here and be "imminent and unavoidable."  <u>Harmoni Int'l Spice,</u>

<u>Inc. v. United States</u>, 41 CIT __, __, 211 F. Supp. 3d 1298, 1308–09 (2017)

("<u>Harmoni</u>").  Plaintiff's largely unsubstantiated allegations about potential harm to

its business do not rise to this level of severity.

    Additionally, although it argues that it would be unable to afford the bonds

necessary to proceed with the normal administrative and judicial routes to challenge

Commerce's determination, <u>see</u> Pl.'s Mot. at Ex. J, ¶ 13, Plaintiff offers no support for

the position that it could not secure the capital to fund those bonds from other

sources.  <u>See</u> <u>Harmoni</u>, 41 CIT at __, 211 F. Supp. 3d at 1308 (denying a preliminary

---

[7] Plaintiff states that it is "at immediate risk of losing its entire U.S. export market, which is its primary market and represents nearly half of its total exports by value." <u>See</u> Pl.'s Mot. at 13.  However, Plaintiff does not offer any evidence to support this statement, nor does it offer any evidence concerning the portion of its business that is dependent on exports, generally speaking.

injunction where Plaintiff offered no proof that it had exhausted other avenues to secure capital). Although the need to seek out new markets or resort to alternative sources of capital may cause an adverse economic impact, the standard for irreparable harm requires more than an adverse economic impact. See Corus Grp. PLC v. Bush, 26 CIT 937, 944, 217 F. Supp. 2d 1347, 1355 (2002), aff'd in part sub nom. Corus Grp. PLC. v. Int'l Trade Comm'n., 352 F.3d 1351 (Fed. Cir. 2003).

Finally, according to Plaintiff, it has already suffered harm to its reputation in the U.S. See Pl.'s Mot. at Ex. J, ¶ 16. Although Plaintiff states this harm will be irreparable absent a grant of its requested relief, see id., it has done little more than make this broad-based allegation. Beyond Mr. Seylam's affidavit, Plaintiff offers no evidence that Plaintiff's reputation has been harmed to date, let alone that it will be irreparably harmed going forward.

## III. Balance of Harms

Plaintiff contends the balance of harms weighs in its favor as it will suffer the loss of its U.S. sales market if the injunction does not issue. See Pl.'s Mot. at 20–21. When considering a motion for a preliminary injunction, the court must "balance the competing claims of injury and must consider the effect" that granting or denying relief would have on each party. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24 (2008) ("Winter"). The loss of a significant market may be a significant harm, but the harm caused by piecemeal appellate review of Commerce's procedural determinations is also significant.

Balancing the hardship also requires the court to balance the equities.
See Winter, 555 U.S. at 20.  Here, Plaintiff admits that it did not begin to attempt to
upload its Sections B and C questionnaire responses until 4:10 pm, less than an hour
before the deadline.  See Compl. at ¶ 9.  Moreover, Plaintiff said that when it first
received an error message regarding the Domestic Sales Table from the Section B
questionnaire, it decided not to call the ACCESS help desk.  See Compl. at ¶ 10.
Plaintiff could have not only accounted for system errors in advance, but also could
have attempted to rectify the error with the help of known resources, but it chose not
to.  Interrupting the administrative process and resorting to the judicial process is
not a costless endeavor.  There are potential costs to the government as well as the
domestic industry should it be entitled to relief as a result of the investigation.  For
the reasons given, and in light of the would-be harm to the government and the
domestic injury, the balance of equities cannot favor Plaintiff whose alleged harms
were avoidable.

## IV.    Public Interest

Plaintiff requests that this court force Commerce to accept its responses to
Sections B and C of the ADD questionnaire, thus asking the court to grant it the
ultimate relief it seeks.  Where a plaintiff requests the "permanent, ultimate relief,"
the public interest may "discourage[] issuance of a preliminary injunction."  See
Cyber Systems, 44 CIT at __, Slip Op. 20-130 at 7–8.  A preliminary injunction that
asks for the permanent, ultimate relief disrupts the status quo and harms the public

Court No. 20-03843                                                          Page 17

interest where a hearing on the merits later reveals that the facts of the case demand

a contrary conclusion to that provisionally reached in granting the preliminary

injunction.  See id.  The public interest is served by the review of Commerce's

procedural determinations upon the review of its final determination.  See PPG

Indus., Inc. v. United States, 2 CIT 110, 112–13, 525 F. Supp. 883, 885 (1981)

(discussing the Customs Court Act of 1980).

## CONCLUSION

For the foregoing reasons it is

**ORDERED** that Plaintiff's motion for a TRO and a preliminary injunction are

denied.

                                                    /s/ Claire R. Kelly
                                                    Claire R. Kelly, Judge

Dated:         December 6, 2020
               New York, New York